Tahanie A. Aboushi, Esq. (TA-6529)
The Aboushi Law Firm, PLLC.
1441 Broadway, Suite 5036
New York, NY 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
BASSEMA YOUSEF,                                          :      Civil Action No.: 1:16-cv-6416
                                                         :                  (CM)
                              Plaintiff,                 :
      -against-                                          :      **AMENDED COMPLAINT**
                                                         :
AL JAZEERA MEDIA NETWORK (AJMN)                          :
AL JAZEERA AMERICA (AJAM) and                            :      **TRIAL DEMANDED BY**
INFINITY CONSULTING SOLUTIONS ("ICS")                    :      **JURY**
                              Defendants.                :
------------------------------------------------------------X

Plaintiff, BASSEMA YOUSEF, by her attorneys, THE ABOUSHI LAW FIRM, PLLC, complaining of the Defendants, respectfully alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1. This is an action based on a claim of gender discrimination, sexual harassment and retaliation committed by Defendants: (i) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended by, among others, the Civil Rights Act of 1991 ("Title VII"); and (ii) in violation of the New York State Human Rights Law, NY Exec. Law, § 290 *et seq.* ("NYS HRL"); and (iii) in violation of the New York City Human Rights Law, NYC Admin. Code § 8-107 et *seq.* ("NYC HRL") seeking to recover lost wages, damages for emotional distress, punitive damages, reasonable attorney's fees and costs as a result of being harassed and discriminated against solely on the basis of her sex and terminated in retaliation for opposing illegal harassment.

## JURISDICTION and VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §1331 and under 42 U.S.C. §1983.

3. This Court has supplemental jurisdiction over claims under the laws of New York State and of the City of New York under 28 U.S.C. §1367.

4. Venue is proper in the Southern District of New York under 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in the Southern District.

5. On or about November 18, 2015, Plaintiff timely filed charges of sexual harassment and retaliation, as more fully described *infra*, with the Equal Employment Opportunity Commission ("EEOC").

6. On or about May 20, 2016 and August 5, 2016, the Plaintiff received a Notice of Right to Sue.

7. Plaintiff has fully complied with all the statutory and administrative prerequisites for the filing of this action.

## THE PARTIES

8. Plaintiff is a resident of the City of Manhattan and the State of New York.

9. Defendant Al Jazeera Media Network ("AJMN") is a foreign media company incorporated in the country of Qatar. Al Jazeera Media Network owns and operates multiple subsidiaries throughout the world including Al Jazeera English whose offices are offices located in Chicago, Dallas, Los Angeles, Miami, New York, New Orleans and San Francisco.

10. On information and belief, Defendant Al Jazeera America ("AJAM") is a controlled subsidiary of Al Jazeera Media Network. Both of these entities consist of a single employer, which employed Plaintiff Plaintiff and is heretofore known as "Al Jazeera" with a principle place of business at 435 Hudson Street, New York, NY 10014.

11. Infinity Consulting Solutions ("ICS") is a corporation engaged in the business of recruiting and human resources with a principle place of business located at 462 7th Avenue, New York, NY 10018.

## STATEMENT OF FACTS

12. Plaintiff was an employee of Al Jazeera America located at 435 Hudson Street, New York, NY 10014 for eight months.

13. As the parent company of AJAM, Al Jazeera Media Network exercises control over the management and operation of AJAM.

14. At the time Plaintiff was hired by AJAM, Luai Bashir ("Bashir") was the Director of the Project Management Office. Three (3) months following Plaintiff's hire, Bashir was promoted to Vice President of Project Management Office and Business Intelligence.

15. On November 10, 2014, Bashir contacted Plaintiff via LinkedIn and asked if she would be interested in working on an independent project for AJAM. Plaintiff responded that she was interested and sent Bashir her resume.

16. Plaintiff met with Bashir on three separate occasions to discuss the potential project. Bashir offered Plaintiff a full time position and scheduled an interview with the Chief Financial Officer at AJAM.

17. Plaintiff was interviewed on January 2, 2015 by AJAM's Chief Financial Officer ("CFO"), Anand Gupta.

18. On January 9, 2015, Bashir confirmed Plaintiff's hire via email for the position of Program Manager for the duration of three months and Plaintiff was to be offered full time employment before the three months were completed.

19. Upon being hired, Plaintiff was directed to go to Infinity Consulting Solutions ("ICS") to complete documents to commence her employment on January 12, 2015.

20. Bashir escorted Plaintiff to the ICS office where he waited as Plaintiff completed the necessary paperwork.

21. Plaintiff began work on the 12th of January and the very first week Bashir asked Plaintiff to stay in the office three evenings, well past typical and appropriate work hours- often times beyond 12:00 a.m. These requests continued until the termination of Plaintiff's employment on September 14, 2015.

22. Plaintiff was uncomfortable with Bashir's requests, which were made worse by the fact that Bashir had not provided Plaintiff with work according to her title. In response, Bashir insisted she not look for other jobs or take interviews because she was "safe" with him.

23. Bashir further stated that he was planning to pass the torch to her someday and that she should not leave.

24. The work did not require Plaintiff to be at the office that late, as the assignments were not urgent or the work did not require long hours to complete.

25. Bashir continued to ask Plaintiff to come into the office and sit with him in the conference room until late hours.

26. During this time Bashir would engage in personal conversations often asking Plaintiff about her single friends. Bashir also told Plaintiff her husband did not pay enough attention to her. Bashir continued to ask Plaintiff out to dinner after making her stay late

4

at work, ask her to attend events with him as his "date" and asked Plaintiff to take vacations with him.

27. If Plaintiff left the office for the day before 7 p.m., Bashir would often ask Plaintiff to come back during late hours. Bashir also asked Plaintiff to work on weekends and would text Plaintiff at all hours of the evening.

28. Bashir would text Plaintiff at all hours of the night including 9 p.m. - 5 a.m. complaining about personal and work related matters.

29. Often times Bashir asked her to return to the office due to an "emergency" causing Plaintiff to rush back to the office.

30. Upon arriving to the office at such odd hours, Bashir would be alone in the conference room and would just want to talk to Plaintiff about his and her personal life.

31. When Plaintiff realized that Bashir's middle of the night calls and texts were to get her alone with him, she began to avoid responding or returning to the office.

32. In response, Bashir threatened Plaintiff that she worked for him and should give him the respect he deserves for trying to give her attention she would not get anywhere else.

33. Bashir threatened Plaintiff to always remember who "brought her into AJAM" and that he could take it away.

34. Plaintiff was afraid and feared losing her job. She resumed returning to the office after hours at the demand of Bashir.

35. Bashir continued to call and text Plaintiff to keep him company.

36. Plaintiff maintained the appearance of being friendly to avoid losing her job and to reduce Bashir's pressure and aggression towards her.

37. Bashir soon began demanding that Plaintiff meet him at his apartment to complete work

together.

38. On Sunday, February 15, 2015 at approximately 6 p.m., Bashir demanded Plaintiff meet him at his apartment under the guise of finishing an assignment.

39. Plaintiff asked if they could meet at the office but Bashir aggressively insisted by reminding Plaintiff "who is keeping her at AJAM."

40. Plaintiff was too nervous to say no. When Plaintiff arrived at Bashir's apartment, he had lit candles and prepared wine and food. He also had a movie playing on the television.

41. Plaintiff became visibly uncomfortable and upset and asked Bashir to clarify the urgent work that needed to be completed. When Bashir realized she was agitated, he became agitated and allowed her to leave.

42. The following day and for the remainder of the week, at the office Bashir was visibly angry with Plaintiff and ignored her when she asked for clarifications on assignments.

43. During the week of February 16, 2015 on more than one occasion, Bashir asked Plaintiff to go with him to get coffee and upon being outside the office, Bashir would yell and berate Plaintiff for rejecting him.

44. Thereafter, Bashir continued to invite Plaintiff to meet at night and often on weekends and Plaintiff rejected his demands.

45. As a result of Plaintiff refusing to meet Bashir, Bashir would berate Plaintiff.

46. On or about May 11, 2015, Bashir screamed at Plaintiff while at the office telling her she was "the single biggest mistake I ever made in this company."

47. Bashir told Plaintiff she was ungrateful, doubtful and a worthless hire that did not listen or know how to take orders and that she didn't appreciate him enough.

48. Plaintiff was mentally and emotional damaged by Bashir's sexual harassment, abuse and

retaliation against her.

49. Plaintiff feared Bashir would fire her if she did not accept his calls at night and respond to his text messages throughout the night. Plaintiff began bringing friends with her to meet Bashir or Plaintiff would attempt to leave the "meeting" early.

50. Upon berating Plaintiff for questioning his motives, asking about work-related issues, or rejecting his invitations to meet with him on the weekends, Bashir would apologize profusely and ask Plaintiff to forgive him and would try to "make it up to her" by asking her to create her own projects she wanted to work on in the office and promised to help her move to another group within AJAM.

51. At one point Bashir told Plaintiff to create her own job description so she could transition to a position in Government Relations at AJAM. Later that same day he yelled at Plaintiff in public and left her crying.  Bashir then texted her to tell her she was the worst mistake he made for the company. Bashir then texted Plaintiff "habibti [an Arabic word for "my love"], you know I care about you no matter what flare ups we have. Every time I reach out or try to make you happy, somehow I end up feeling insulted & hurt but I simply had enough and can't keep draining my emotions trying to make you happy."

52. Bashir began a modus operandi of demanding Plaintiff meet him at inappropriate hours for "work" and if Plaintiff brought a friend or asked to leave sooner rather than later, Bashir would yell and criticize Plaintiff at the office during business hours the following day and for the duration of the week.

53. Bashir would tell Plaintiff she was not understanding enough towards him and was not supportive or sensitive to his struggles.

54.  On multiple occasions Bashir insisted Plaintiff meet him outside of the office for dinner.

55. On May 22, 2015, Bashir asked Plaintiff where she was via text and Plaintiff responded she was with people. Bashir responded, "if you are with women, you are welcome but if you are with men forget it."

56. Bashir spoke of topics that were sexual in nature with Plaintiff and would ask Plaintiff private questions. Bashir spoke of former girlfriends of his and compared Plaintiff to them. He often asked her about her single friends.

57. On multiple occasions Bashir asked Plaintiff how she deals with a husband who is never home and never satisfies her.

58. Bashir continually told Plaintiff her husband does not give her enough attention and would ask Plaintiff what types of men she prefers.

59. Bashir would often suggest that Plaintiff take vacations with him and asked to meet Plaintiff's mother and father.

60. Bashir would ask Plaintiff to "grab coffee with him" or walk out of work together as subtle ways to make advances towards Plaintiff.

61. For fear of losing her job and fear of being berated, embarrassed and smeared in her field, Plaintiff obliged.

62. On many occasions Bashir asked Plaintiff to take him shopping for clothes.

63. On Plaintiff's birthday, April 14, 2015, Bashir insisted that they not go to the office and instead go get facials and massages as his birthday gift to Plaintiff. Bashir asked Plaintiff to meet him at Bliss Spa located 541 Lexington Avenue.

64. When Plaintiff declined his invitation Bashir insisted Plaintiff meet him at the Spa. Plaintiff feared being berated and met Bashir at the spa. Although Bashir tried to book a massage, Plaintiff insisted on only a facial and Bashir hesitated to argue in front of the

clerk.

65. Bashir waited for Plaintiff to finish then told her they were going to lunch. Plaintiff insisted she return to work and Bashir ignored Plaintiff and repeated that they were going to lunch together. Upon having lunch, Plaintiff asked Bashir if she could be excused and Bashir became angry and told her to leave.

66. Plaintiff needed to be away from the office August 12th to August 25th and requested to telework.

67. Plaintiff prepared a work plan. Bashir agreed to the telework dates. Teleworking was not only normal for Al Jazeera employees but Plaintiff did not have her own work space- such as a cubicle, desk or location. Plaintiff was routinely asked to telework.

68. Prior to traveling in August, Plaintiff was tasked to collect information from the newsgathering team. Bashir also gave Plaintiff work to complete during her travel. Bashir approved her request to telework.

69. Plaintiff was later instructed by senior leaders of Al Jazeera to not complete the assignment issued by Bashir because he did not have the authority to give Plaintiff that work.

70. Thereafter, three days prior to her departure, Bashir insisted Plaintiff not leave because he did not want to be alone and was unhappy Plaintiff was leaving him. Plaintiff informed Bashir her father was gravely ill and she needed to be with him.

71. Bashir became angry and threatened to not approve Plaintiff's time card and threatened to fire Plaintiff.

72. Plaintiff left to tend to her ailing father and upon her return Bashir was on vacation. While on vacation, Bashir disapproved Plaintiffs time sheet. Plaintiff reached out to

Bashir on September 2nd and Bashir then invited Plaintiff to meet to discuss his reasons for not approving her request upon his return.

73. On September 2, 2015 Plaintiff spoke with HJ Chang ("Chang"), Senior Vice President, Human Resources of AJAM, to inform her of Bashir's harassment and request a meeting.

74. Chang insisted on inviting Bashir to the meeting and Plaintiff asked that Chang meet with her and Bashir separately. Chang refused and thereafter ceased communicating with Plaintiff.

75. Plaintiff reached out to Change three more times on September 3rd, 8th and 10th and requesting a meeting to discuss the harassment and other issues and Chang refused to meet with Plaintiff.

76. Plaintiff then reached out to Kevin Hyatt, Human Resources Manager with ICS, and asked to meet to discuss the aforementioned matters which included the unwanted advances by Bashir.

77. Plaintiff went to the ICS office on September 4th and spoke at length with Kevin Hyatt regarding all of her concerns including hostile work environment, sexual harassment, harassment, discrimination, unpaid work hours, verbal abuse and retaliation.

78. On September 4th, Bashir insisted on meeting with Plaintiff at 2:00 p.m. in the conference room located at the AJAM office at 34th and 8th Avenue.

79. Bashir was visibly intoxicated as his speech was slurred, his eyes were red and his clothes were dirty and disheveled. He apologized to Plaintiff profusely and stated he would start giving Plaintiff "real work" to do immediately and that he had the full backing of the President of Al Jazeera to move forward.

80. Without warning, on September 11, 2015, Plaintiff's email was terminated.

81. On September 14, 2015, Plaintiff was told by Kevin of ICS to turn in the work laptop.

82. Defendants would not have sexually harassed Plaintiff but for her gender.

83. Defendants would not have terminated Plaintiff but for her complaint of Bashir's sexual harassment, hostility, and verbal abuse.

84. Defendants' actions were intended to create a working environment that no reasonable person would tolerate.

85. Defendants' actions were intended to create a hostile working environment and did in fact create a hostile work environment for Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

86. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

87. Defendants subjected Plaintiff to unlawful sexual harassment, disparate treatment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

88. As a result, Plaintiff suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial but not less than Five Hundred Thousand Dollars $250,000.

## AS AND FOR A SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII

89. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

90. Defendants subjected Plaintiff to unlawful sexual harassment, disparate treatment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as

11

amended, 42 U.S.C. § 2000e, et seq. and retaliated against Plaintiff for her opposition to Defendants' illegal conduct.

91. As a result, Plaintiff suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial but not less than Five Hundred Thousand Dollars $250,000.

### AS AND FOR A THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER STATE LAW

92. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

93. Defendants engaged in unlawful discrimination against Plaintiff on the basis of her gender, in violation of NYS HRL, NY Exec. L. § 290 et seq., and, more particularly, NY Exec. L. § 296(7), by subjecting Plaintiff to a hostile work environment, discriminating against her with regards to the terms and conditions of her employment and by terminating her employment.

94. As a result, Plaintiff suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial but not less than Five Hundred Thousand Dollars $250,000.

### AS AND FOR A FOURTH CAUSE OF ACTION
### DISCRIMINATION UNDER STATE LAW

95. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

96. Defendants engaged in unlawful retaliation against Plaintiff in violation of NYS HRL, NY Exec. L. § 290 et seq., and, more particularly, NY Exec. L. § 296(6), by terminating

Plaintiff and by knowingly offering a meritless challenge to Plaintiff's entitlement to unemployment insurance benefits.

97. As a result, Plaintiff suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial but not less than Five Hundred Thousand Dollars $250,000.

### AS AND FOR A FIFTH CAUSE OF ACTION
### DISCRMINATION UNDER
### THE NEW YORK CITY ADMINSITRATIVE CODE

98. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

99. Defendants engaged in unlawful discrimination against Plaintiff on the basis of her gender, in violation of the NYC HRL, NYC Admin Code § 8-107 et. seq., and more particularly NYC Admin. Code §§ 8-107(1)(6)(7), by subjecting Plaintiff to a hostile work environment, discriminating against her with regards to the terms and conditions of her employment and by terminating her employment.

100. As a result, Plaintiff suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial but not less than Five Hundred Thousand Dollars $250,000.

### AS AND FOR A SIXTH CAUSE OF ACTION

101. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

102. Defendants are liable for the actions and inactions of each and every one of their agents and employees, including without limitation Bashir, pursuant to NYC Admin. Code § 8-107(13).

103. As a result, Plaintiff suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial but not less than Five Hundred Thousand Dollars $250,000.

## **PRAYERS FOR RELIEF**

*WHEREFORE,* Plaintiff respectfully requests that the Court issue a judgment, punitive damages, together with the attorneys' fees, interest, costs and disbursements of this action and

A. On the first cause of action compensatory and punitive damages in an amount to be determined at trial but no less than $250,000; and

B. On the second cause of action compensatory and punitive damages in an amount to be determined at trial but no less than $250,000.00;

C. On the third cause of action compensatory and punitive damages in an amount to be determined at trial but no less than $250,000.00;

D. On the fourth cause of action compensatory and punitive damages in an amount to be determined at trial but no less than $250,000.00;

E. On the fifth cause of action compensatory and punitive damages in an amount to be determined at trial but no less than $250,000.00; and

F. On the sixth cause of action compensatory and punitive damages in an amount to be determined at trial but no less than $250,000.00.

G. Any other and further relief the Court deems just and proper.

Dated: New York, NY
      October 12, 2016

Respectfully Submitted,

By: _____/s/_____
Tahanie A. Aboushi, Esq (TA-6529)