UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BASSEMA YOUSEF,

    Plaintiff,

v.

AL JAZEERA MEDIA NETWORK (AJMN),
AL JAZEERA AMERICA (AJAM), and
INFINITY CONSULTING SOLUTIONS (ICS)

    Defendants.

Case No. 1:16-CV-06416 (CM)

## DECLARATION OF MIKE SOKARY

Pursuant to 28 U.S.C. § 1746, I, Mike Sokary, hereby declare as follows:

1. I am the Manager of International Human Resources of Defendant Al Jazeera Media Network ("AJMN"). I have held this position since January 1, 2013. I submit this declaration in support of AJMN's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(2). This declaration is based on my personal knowledge of the facts set forth herein or my review of documents maintained in the ordinary course of business.

2. AJMN is a Qatari corporation with a principal place of business in Doha, Qatar.

3. AJMN is a television and digital news gathering and reporting company with multiple news channel brands operating regionally in the Middle East, Africa, Europe, the Balkans, Turkey, Asia and the Americas. AJMN's news channel brands are operated by AJMN or one of its subsidiaries.

4. Attached hereto as Exhibit A is a true and correct copy of Law No (1) – 1996 Establishing the Qatari Satellite Channel General Corporation.

5. Attached hereto as Exhibit B is a true and correct copy of Law No. (10) of 2011

In Respect of Conversion of Al Jazeera Satellite Network to Private Corporation for Public Utility.

6. As a utility private corporation with public benefit, AJMN has no equity holders.

7. AJMN currently does not conduct, and did not conduct at any time relevant to this motion, any business in the State of New York. AJMN does not maintain an office in New York and is not licensed or otherwise registered to do business in New York. AJMN does not have a registered agent in New York or any New York officers, employees or agents.

8. AJMN does not own or rent any real property within New York. Furthermore, AJMN does not have a bank account in New York, nor does AJMN have a New York telephone listing or maintain any books or records in New York.

9. AJMN maintains a website at www.aljazeera.com; the website is globally accessible to any user with internet access, but is not specifically directed at citizens in New York. The website is simply a passive medium to make news content and information available to the general public.

10. Defendant Al Jazeera America, LLC ("AJAM") is a New York-based indirect subsidiary of AJMN. AJAM and AJMN are distinct corporate entities.

11. AJAM owned and operated the Al Jazeera America Channel, a U.S.-based television and digital news channel that provided both domestic and international news coverage packaged for and distributed to American audiences.

12. AJAM is owned 100% by Al Jazeera America Holdings II, LLC (formerly Current Media, LLC), which in turn is owned 100% by Al Jazeera America Holdings I LLC (formerly Al Jazeera America Holdings I, Inc., until its name was changed on or about February 27, 2017). Al Jazeera America Holding I, Inc. was formed by AJMN in December 2012 as a

wholly owned subsidiary for purpose of acquiring Current Media LLC and its subsidiaries.

13. Current Media LLC owned and operated the Current TV Channel. In 2013, following the acquisition by Al Jazeera America Holdings I, Inc., the Current TV Channel was renamed the Al Jazeera America Channel.

14. AJAM is not an office or bureau of AJMN, which does not have any offices or bureaus in New York. AJMN's offices and bureaus do not have independent licenses to broadcast. They are funded by AJMN to gather content which is then broadcast on AJMN channels.

15. Unlike AJMN's offices and bureaus, AJMN's subsidiaries have their own broadcasting licenses and gather content for their own use. They generally do not provide broadcasting content to AJMN.

16. As noted above, AJAM is an indirect subsidiary of AJMN, not a bureau or office of AJMN. AJAM did not have authority to enter into contracts on behalf of AJMN, did not gather news or generate content for AJMN, and did not sell subscriptions or advertising content for AJMN. Neither AJAM nor AJMN had a power of attorney for the other or guaranteed any debt instruments for the other. In addition, AJAM and AJMN were not co-signatories on any contracts or parties to a joint debt instrument with the other.

17. AJAM had its own Board of Directors, which met regularly. The AJAM Board of Directors appointed the executive officers of AJAM. Six of the members of AJAM's Board of Directors were employees of AJMN or one its affiliates; two of the members of AJAM's Board of Directors were unaffiliated with AJMN. Appointments to the AJAM Board of Directors were made by Al Jazeera America Holdings II, LLC, as sole equity holder of AJAM. Each of the AJAM Board members affiliated with AJMN performed their duties with each corporate entity

separately and independently and, when acting in their capacity as Board members of AJAM, did not act on behalf of or under the direction of AJMN.

18.  On January 11, 2016, AJAM's Board of Directors made the decision, during a meeting of the Board of Directors, to shut down AJAM due to an unsustainable business model and economic challenges in the US media marketplace. On January 13, 2016, AJAM's CEO, Al Anstey, publicly announced that AJAM was shutting down its cable TV and digital operations, including the Al Jazeera America Channel, by April 30, 2016.

19.  When AJAM was in operation, it had its own broadcasting license and supplied domestic and international broadcasting content only to American audiences through channel and online platforms. AJAM and AJMN had separate newsgathering teams and independently created and produced their own content. On only limited occasions was AJAM content broadcast on AJMN.

20.  AJAM entered into contracts with television providers, including DirecTV, Comcast/Xfinity, and Time Warner Cable, to distribute the Al Jazeera America channel to American audiences. AJMN was not a party to these distribution contracts. Additionally, AJAM maintained its own distribution team, which was staffed by AJAM employees who were responsible for expanding the distribution of AJAM content and programming.

21.  AJAM was headquartered in New York City and rented four facilities to carry on its operations in New York. AJMN was not a party to any of these lease agreements.

22.  When AJAM was in operation, it was funded through the sale of on-air advertising time. AJAM also received capital contributions from AJMN. On an annual basis, AJMN would deposit money into AJAM's general disbursement account. AJAM made its own decisions with respect to the use and spending of this money. AJAM's budget was not subject to

approval by AJMN.

23. While AJAM was partially funded by AJMN, AJAM had its own finance department, bank account and payroll; filed its own financial statements and tax returns independent of AJMN; and set its own annual budget. AJMN did not control day-to-day operations and management of AJAM.

24. Among other things, AJAM employed its own accounting and financial personnel, who performed and oversaw accounting and financial functions related to the operation of AJAM and the Al Jazeera America Channel, which is no longer operating. AJAM also maintained a payroll account from which it funded the salaries for AJAM employees. AJMN did not direct or control AJAM's payroll account.

25. When in operation, AJAM had its own human resources, marketing, sales, distribution, and project management functions. AJAM maintained its own website and had its own IT support team. AJAM also had its own Legal Department.

26. When AJAM was operating its business, AJAM solicited its own employment applications, conducted interviews, and made its own hiring decisions. AJMN was not involved in the selection and hiring of AJAM's staff, but on limited occasions AJMN seconded employees to AJAM for periods of limited duration.

27. AJMN did not post any AJAM positions on the AJMN career site. Employment applications for AJAM were either provided by Current TV, as part of the acquisition, or handled through AJAM's online recruiting tool, Jazz. Some freelance applications were processed through Infinity Consulting Solutions, Inc. ("ICS"), a third-party agency. Interviews of employment candidates were conducted by AJAM's management in New York.

28. AJMN played no role in coordinating or overseeing Plaintiff's freelance

assignment with AJAM.  Among other things, AJAM entered into a Master Services Agreement with ICS dated January 20, 2015 (the "Services Agreement"), pursuant to which ICS agreed to provide staffing and payroll services to AJAM.  Plaintiff was assigned as a contractor to perform services for AJAM in accordance with the terms of the Services Agreement.  AJMN was not a party to the Services Agreement between AJAM and ICS.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 30, 2017.

_____
Mike Sokary