UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BASSEMA YOUSEF,<br><br>        Plaintiff,<br><br>v.<br><br>AL JAZEERA MEDIA NETWORK (AJMN),<br>AL JAZEERA AMERICA (AJAM), and<br>INFINITY CONSULTING SOLUTIONS (ICS)<br><br>        Defendants. | Case No. 1:16-CV-06416 (CM) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT AL JAZEERA MEDIA NETWORK'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2)**

                                      **DLA PIPER LLP (US)**
                                      1251 Avenue of the Americas
                                      New York, New York 10020
                                      (T): 212-335-4500
                                      (F): 212-335-4501

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

   I.  Plaintiff Has Not Made a *Prima Facie* Showing of Personal Jurisdiction ......................... 1

      A.  Plaintiff Has Failed to Show AJMN Is Subject to General Jurisdiction in New York ............................................................................................................................ 2

         1.  Plaintiff's Attempt to Predicate Personal Jurisdiction on an Agency Theory Fails ................................................................................................... 2

         2.  Plaintiff Cannot Predicate Jurisdiction on a "Mere Department" Theory .............. 4

      B.  Plaintiff Has Failed to Show AJMN Is Subject to Specific Jurisdiction in New York ............................................................................................................................ 8

      C.  Exercising Jurisdiction over AJMN Would Not Comport with Due Process ............... 9

      D.  Plaintiff Has Failed to Show that Fed. R. Civ. P. 4(k)(2) Is Applicable ....................... 9

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**                                                                                                                               **PAGE(S)**

Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.,
    2008 WL 2971775 (S.D.N.Y. July 31, 2008) (McMahon, J.) ..................................................4

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
    902 F.2d 194 (2d Cir. 1990)..................................................................................................10

Bellomo v. Pa. Life Co.,
    488 F. Supp. 744 (S.D.N.Y. 1980) ........................................................................................7

Bernstein v. Vill. of Wesley Hills,
    95 F. Supp. 3d 547 ................................................................................................................7

Bulova Watch Co. v. K. Hattori & Co.,
    508 F. Supp. 1322 (E.D.N.Y. 1981) ......................................................................................4

Century Pac., Inc. v. Hilton Hotels Corp.,
    528 F. Supp. 2d 206 (S.D.N.Y. 2007), aff'd 354 Fed. App'x 496 (2d Cir. 2009).....................2

Chavez v. Metro. Dist. Comm'n,
    198 Fed. App'x 74 (2d Cir. 2006)..........................................................................................5

Daimler AG v. Bauman,
    571 U.S. __, 134 S.Ct. 746 (2014).........................................................................................9

DiStiso v. Cook,
    691 F.3d 226 (2d Cir. 2012)...................................................................................................7

Fawzi v. Al Jazeera Media Network,
    Civ. A. No. 16-cv-01812 (D.D.C. 2016) .............................................................................10

Frummer v. Hilton Hotels, Int'l, Inc.,
    19 N.Y.2d 533 (1967) ............................................................................................................3

GEM Advisors, Inc. v. Corporacion Sidenor, S.A.,
    667 F. Supp. 2d 308 (S.D.N.Y. 2009)....................................................................................3

In re M/V MSC Flaminia,
    107 F. Supp. 3d 313 (S.D.N.Y. 2015)..................................................................................10

Indem. Ins. Co. v. K-Line Am., Inc.,
    2007 WL 1732435 (S.D.N.Y. June 14, 2017) .......................................................................7

Ingenito v. RiRi USA, Inc.,
    89 F. Supp. 3d 462 (E.D.N.Y. 2015) .....................................................................................9

J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,
    131 F. Supp. 2d 544 (S.D.N.Y. 2001)..........................................................................6, 7

J.S. ex rel. N.S. v. Attica Cent. Schs.,
    386 F.3d 107 (2d Cir. 2004)...............................................................................................2

Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,
    160 F. Supp. 2d 722, 735–36 (S.D.N.Y. 2001)..................................................................5

Jazini v. Nissan Motor Co.,
    148 F.3d 181 (2d Cir. 1998)......................................................................................1, 7, 9

Morse Typewriter v. Samanda Office Comm'ns Ltd.,
    629 F. Supp. 1150 (S.D.N.Y. 1986)...................................................................................8

Novelaire Techs., LLC v. Munters AB,
    2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013) (McMahon, J.).......................................2, 3, 4

Palmieri v. Estefan,
    793 F. Supp. 1182 (S.D.N.Y. 1992)...............................................................................5, 8

Rates Tech. Inc. v. Broadvox Holding Co.,
    2014 WL 46538 (S.D.N.Y. Jan. 6, 2014) ..........................................................................3

Saraceno v. S.C. Johnson & Son, Inc.,
    83 F.R.D. 65 (S.D.N.Y. 1979) ...........................................................................................8

Schultz v. Safra Nat'l Bank of NY,
    377 Fed App'x 101 (2d Cir. 2010).....................................................................................1

Tamam v. Fransabank Sal,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010).............................................................................10

Tsegaye v. Impol Alum. Corp.,
    2003 WL 221743 (S.D.N.Y. Jan. 20, 2003) ......................................................................3

Wilder v. News Corp.,
    2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ...............................................................4, 5, 6

World Film Servs., Inc. v. RAI Radiotelevisione Italiania S.p.A.,
    1999 WL 47206 (S.D.N.Y. Feb. 3, 1999).........................................................................3

Defendant Al Jazeera Media Network ("AJMN") submits this reply brief in further support of its motion to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction.

## INTRODUCTION

Nothing in Plaintiff's opposition papers changes the fact that AJMN is a Qatari corporation that does not conduct business in New York (either by itself or through an agent) and had no reasonable expectation of being sued in New York in connection with Plaintiff's purported employment in the state. Plaintiff's unsupported and conclusory assertions by affidavit improperly overstate the relationship between AJMN and Al Jazeera America, LLC ("AJAM") and are demonstrably incorrect, based on inadmissible evidence, irrelevant, and, ultimately, legally insufficient to confer personal jurisdiction over AJMN. At its core, Plaintiff's Opposition argues AJMN is subject to personal jurisdiction based on little more than conduct intrinsic to the parent/subsidiary relationship that courts have declared insufficient for personal jurisdiction over a foreign parent. Moreover, the exercise of personal jurisdiction over AJMN based on AJAM's New York presence would violate constitutional due process, and Plaintiff fails to establish that Fed. R. Civ. P. 4(k)(2) confers jurisdiction over AJMN. Accordingly, for the reasons set forth herein and in AJMN's moving papers, AJMN's motion to dismiss should be granted.

## ARGUMENT

### I. Plaintiff Has Not Made a *Prima Facie* Showing of Personal Jurisdiction

The burden falls squarely on Plaintiff to allege facts sufficient to make a *prima facie* showing that this Court has personal jurisdiction over AJMN. See Schultz v. Safra Nat'l Bank of NY, 377 Fed App'x 101, 102 (2d Cir. 2010). Plaintiff cannot satisfy this burden by relying on conclusory allegations couched as fact. See Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998). Nor can she rely on inadmissible hearsay or purported facts about which she has no

1

personal knowledge. See Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 216-17 (S.D.N.Y. 2007) (disregarding hearsay and portions of affidavit not based upon personal knowledge), aff'd 354 Fed. App'x 496 (2d Cir. 2009).[1] Disregarding such assertions, as the Court must, and even crediting Plaintiff's remaining allegations, the limited control AJMN exerts over AJAM is nothing more than that which a parent reasonably would exercise over its wholly owned subsidiary and is insufficient to make a *prima facie* showing of personal jurisdiction.

### A. Plaintiff Has Failed to Show AJMN Is Subject to General Jurisdiction in New York

Plaintiff concedes that AJMN is not directly "doing business" in New York and does not itself have "continuous and systematic" contacts with the state.[2] Rather, Plaintiff argues that AJMN is subject to general personal jurisdiction in New York under CPLR § 301 solely by reason of its relationship with AJAM. Specifically, Plaintiff argues that AJAM is both an agent of AJMN and a "mere department" of AJMN. Plaintiff is wrong on both accounts.

### 1. Plaintiff's Attempt to Predicate Personal Jurisdiction on an Agency Theory Fails

Plaintiff cannot predicate personal jurisdiction over AJMN on an agency theory because she does not and cannot state facts to demonstrate that AJAM is "a substantial participant in [AJMN]'s actual business and ha[d] the discretion and authority to bind the defendant." See Novelaire Techs., 2013 WL 6182938 at *4. Indeed, Plaintiff makes no allegation in her Amended Complaint (or in her proposed second amended complaint or her Opposition) that

---

[1] See also J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107 (2d Cir. 2004) (refusing to consider "conclusory or hearsay statements" in affidavits when resolving jurisdictional issue).

[2] Plaintiff argues that New York users can access AJMN's website to contact AJMN and apply for jobs with "the New York bureau office." However, AJMN does not have a New York bureau or any offices or employees in New York, see Sokary Decl. ¶¶ 7, 14 [Dkt. No. 60]. Moreover, although, AJMN's website is available globally, it does not purposefully target New York residents and is not used to purchase products, enter contracts, or conduct business in the state. See id. ¶ 9. Thus, AJMN's website is insufficient to support personal jurisdiction under CPLR § 301. See Novelaire Techs., LLC v. Munters AB, 2013 WL 6182938, *4 (S.D.N.Y. Nov. 21, 2013) (McMahon, J.) (globally accessible website with limited interactive features that does not facilitate commercial activity does not support personal jurisdiction).

AJAM could bind AJMN, and she does not dispute that AJAM did not have a power of attorney or authority to enter into contracts on AJMN's behalf. See Sokary Decl. ¶ 16.

Plaintiff argues that AJAM is AJMN's agent because it is an indirectly owned subsidiary of AJMN and was created for the purpose of owning and operating a news channel in the United States. (Pl. Opp'n at 17.) But as this Court has stated, mere ownership is insufficient to establish an agency relationship for jurisdictional purposes. Novelaire Techs., 2013 WL 6182938 at *5. Similarly, that AJAM, like AJMN, was in the news broadcasting industry is insufficient. See, e.g., Tsegaye v. Impol Alum. Corp., 2003 WL 221743, *5 (S.D.N.Y. Jan. 20, 2003) (New York subsidiary not agent of parent where, even though both in aluminum business, subsidiary did not place or accept orders on parent's behalf and did not have authority sign contracts for parent).

The cases cited by Plaintiff are inapposite and underscore that no agency relationship exists here. For example, in World Film Services, Inc. v. RAI Radiotelevisione Italiania S.p.A., 1999 WL 47206 (S.D.N.Y. Feb. 3, 1999), a court found an agency relationship where the subsidiary performed critical and substantial services for the parent (an Italian producer of tv programs), including "maintenance of technical equipment used for television broadcasts, distribution of the Parent's television programs, research activity concerning television programs, acquisition of television rights, procurement of leasehold improvements, and various technical and other services." Id. at *6.[3] AJAM provides no such services to AJMN, and Plaintiff makes no claim otherwise.

---

[3] The other cases cited by Plaintiff also involve a subsidiary performing critical services for the foreign parent or from which the parent derives substantial revenue. See Frummer v. Hilton Hotels, Int'l, Inc., 19 N.Y.2d 533 (1967) (in-state subsidiary of British hotel company operated parent's hotel reservation system); GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp.2d 308, 319 (S.D.N.Y. 2009) (foreign parent received revenue from contracts entered into by New York subsidiary and owner stated "there was no separate decision-making between the two entities"); Rates Tech. Inc. v. Broadvox Holding Co., 2014 WL 46538 (S.D.N.Y. Jan. 6, 2014) (in-state subsidiary maintained and operated parent's telecommunications equipment and serviced its customers in New York).

Plaintiff asserts that AJAM acted "for the sole benefit of AJMN," but offers no evidence to support same. To the contrary, AJAM and AJMN were both in the business of producing and broadcasting news content, but each did so independently, using its own staff to create its own content to disseminate across its own platforms. See Sokary Decl. ¶¶ 15, 16, 19. AJAM entered into its own distribution contracts, sold its own advertising, and retained its ad revenue; AJMN did likewise. Id. ¶¶ 16, 20. Plaintiff makes no showing – let alone any allegation – to the contrary. "Where subsidiaries carry out their own businesses, and not the … business of [the parent], the subsidiaries cannot be deemed the agents of [the parent company], and CPLR 301 jurisdiction cannot be premised on an agency theory." Novelaire Techs., 2013 WL 6182938 at *5 (internal citation and quotation omitted); see also Arquest, Inc. v. Kimberly-Clark Worldwide, Inc., 2008 WL 2971775 (S.D.N.Y. July 31, 2008) (McMahon, J.) (same).[4]

### 2. Plaintiff Cannot Predicate Jurisdiction on a "Mere Department" Theory

Plaintiff fails to allege facts sufficient to establish that AJMN exerted "pervasive control" over AJAM; thus, her argument that AJAM is a "mere department" of AJMN so as to support general jurisdiction under this theory also fails. See, e.g. Wilder v. News Corp., 2015 WL 5853763, *6 (S.D.N.Y. Oct. 7, 2015). There is no dispute that AJAM is an indirect wholly owned subsidiary of AJMN and received capital contributions from AJMN; yet, this is not enough under the Beech Aircraft "mere department" test. See Wilder[5], 2015 WL 5853763 at *8-

---

[4] Citing Bulova Watch Co. v. K. Hattori & Co., 508 F. Supp. 1322 (E.D.N.Y. 1981), Plaintiff notes that "one indicator of agency is whether the parent would be obliged to enter the market directly if the subsidiary was absent because the market is too important." Yet, this "indicator" does not exist here. AJMN was established in Qatar in 1996, but it was not until 2012 that AJAM was formed to acquire and operate an independent news channel in the United States. See Sokary Decl. ¶¶ 4, 12. Meanwhile, AJAM shut down its US cable and digital operations in April 2016, which decision was made by AJAM's Board, see id., ¶ 18, and Plaintiff makes no allegation (nor could she) that AJMN has entered the US market to take AJAM's place.

[5] Wilder is directly on-point. In Wilder, addressed in detail in AJMN's moving brief (see AJMN Memo at 16-17), the court held that a wholly owned subsidiary newspaper was not a "mere

9; see also Palmieri v. Estefan, 793 F. Supp. 1182, 1188 (S.D.N.Y. 1992) (affiliates not mere departments of parent despite common ownership and fact that parent required approval of major financial decisions, guaranteed affiliate's financial obligations, reviewed budget, approved key personnel decisions, and assisted affiliate in strategy, negotiations, and policy development).[6] Just as in Palmieri and Jacobs, where no "mere department" relationship was found despite common ownership and financial dependence, AJAM maintained separate books, had its own bank accounts and finance and accounting departments, retained its own advertising revenue, controlled its own budget and payroll, filed its own tax returns and financial statements, and exercised control over its finances and spending without any day-to-day oversight from AJMN. See Sokary Decl. ¶¶ 22-24; AJAM's Response to Interrogatories [Dkt. No. 71-6] at Nos. 5-7, 10. Plaintiff has submitted no evidence that these representations are inaccurate.[7]

---

department" of its parent, a worldwide media conglomerate, even where there board members overlapped, the parent guaranteed the subsidiary's financial liabilities, and the parent appointed key executives and employees of the subsidiary. Id. Plaintiff claims that Wilder is inapplicable because it involved a New York parent and a foreign subsidiary, not a New York subsidiary and a foreign parent. (See Pl. Opp'n at n.7). This is a distinction without a difference; as this court has noted, "it makes no difference for jurisdictional purposes if the local entity is the parent and the foreign corporation is the subsidiary." Palmieri, 793 F. Supp. at 1188 n.9.

[6] See also Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 735–36 (S.D.N.Y. 2001).

[7] Plaintiff claims "AJAM admitted that AJMN disbursed funds to third-parties on its behalf," (See Pl. Opp'n at 8), but this blatantly misrepresents the evidence. In fact, AJAM stated that "AJMN has **not** disbursed funds to third party suppliers on behalf of AJAM during the normal operation of AJAM," but may have done so when AJAM was channel first launched in 2013. See AJAM's Responses to Requests to Admit [Dkt. No. 71-7] at No. 13. Similarly misplaced is Plaintiff's reliance on the Global Transfer Pricing Masterfile Report. As Plaintiff states, the Masterfile Report – which Plaintiff misleadingly calls the "AJMN Report" – was not prepared by AJMN, but by a third-party consulting firm. See Dkt. No. 71-4. The statements made therein, which Plaintiff purports to offer for their truth, are inadmissible hearsay and cannot be relied on to oppose AJMN's motion. See Chavez v. Metro. Dist. Comm'n, 198 Fed. App'x 74 (2d Cir. 2006) (affirming holding that external report prepared by law firm, which was hired to conduct compliance audit, was inadmissible hearsay). Plaintiff also fails to provide any context for the Masterfile Report or its application to AJAM (as compared to channels directly owned and operated by AJMN). To that end, Plaintiff fails to demonstrate the Masterfile Report bears any relevance to the instant jurisdictional question, and it should be disregarded. Id. at 75.

Plaintiff also claims AJAM is a "mere department" of AJMN on the basis that the entities purportedly did not observe corporate formalities. But again, Plaintiff does not dispute that AJAM appointed its own Board members, held separate Board meetings, maintained its own bank accounts, entered into financial arrangements with third parties without any guaranty from AJMN, held assets and leased space in its own name, filed its own taxes, and negotiated and entered its own contracts. See Sokary Decl. ¶¶ 17, 18, 22-24. Plaintiff further acknowledges that AJAM maintained its own bylaws, Board procedures, and corporate governance guidelines, which delineated the authority of AJAM's Board and executives. See Dkt. Nos. 71-8, 71-9, 71-12. That several members of AJAM's Board are affiliated with AJMN and that one of its former executives became an AJMN consultant after AJAM shut down do not support a conclusion that corporate formalities were disregarded. See J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) ("overlapping officers and directors are intrinsic to the parent-subsidiary relationship" and do not confer personal jurisdiction). Importantly, Plaintiff makes no allegation that AJMN's board mirrored AJAM's board, that any executives held positions with AJAM and AJMN at the same time, that AJMN played any role in appointing AJAM executives other than its CEO, that AJMN defined the duties of AJAM's executives and managers, or that AJAM executives were paid by AJMN.[8] Ultimately, AJAM and AJMN were organized and operated as distinct corporate entities for jurisdictional purposes, undermining any claim that AJAM was a "mere department" of AJMN.[9]

---

[8] See Wilder, 2015 WL 5853763 at *10 (subsidiary not mere department, despite common board members and fact that parent appointed subsidiary's key executives, CEO, and editors, where parent did not "appoint[] substantially all of" subsidiaries' officers and managers, did not determine duties of subsidiaries' officers and managers, and did not pay their salaries).

[9] Plaintiff, citing only her affidavit, asserts that AJMN and AJAM did not observe corporate formalities because they purportedly "shared personnel." (Pl. Opp'n at 10.) Yet, aside from listing 12 names, Plaintiff provides no detail regarding such assertion and fails to demonstrate personal knowledge of same. Indeed, Plaintiff was placed with AJAM for 9 months as a

6

The remaining facts Plaintiff has alleged, even if credited, are insufficient to show the "pervasive control" required under the "mere department" test. Plaintiff refers to excerpts from the inadmissible Masterfile Report and the "About Us" section of AJMN's website, which she claims show that AJMN "exercised significant control over AJAM's operations and marketing activities." Yet, that AJMN referenced AJAM as part of the "global" Al Jazeera brand and that the two entities shared certain "principles and values" is insufficient to establish jurisdiction. See Indem. Ins. Co. v. K-Line Am., Inc., 2007 WL 1732435, *10 (S.D.N.Y. June 14, 2017) (that marketing materials identified subsidiary as part of parent "group" and that parent's website refers to formation of subsidiary as its "branch in USA" do not show failure to observe corporate formalities).[10] Similarly insufficient is the fact that AJMN developed AJAM's corporate governance guidelines and that AJAM *may have been* required to consult with or seek approval from AJMN with respect to major financial or legal decisions.[11] "[U]nder New York law a parent of a multinational corporate enterprise may make broad policy decisions for its subsidiaries. Such control is inherent in the parent-subsidiary relationship and does not justify labeling a

---

program manager and played no role in hiring or staffing for AJAM or AJMN. Plaintiff has no personal knowledge of AJAM staffing arrangements, let alone those of AJMN, is not competent to testify regarding same, and statements to the contrary in her declaration must be disregarded. See Bernstein v. Vill. of Wesley Hills, 95 F. Supp. 3d 547 (S.D.N.Y. 2015 ("While the Court does not doubt that A. Zaks is *aware* of at least some of the assertions in his Affirmation, they remain inadmissible if not based on personal knowledge."); DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012) ("[W]here a party relies on affidavits ... to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated.').

[10] See also Bellomo v. Pa. Life Co., 488 F. Supp. 744, 745 (S.D.N.Y. 1980) (portrayal of affiliate as part of unitary enterprise insufficient to confer jurisdiction on parent); Jazini, 148 F.3d at 185 ("statements by Nissan Japan's president that the company 'need[s] to become a truly global company' and that 'I want each part of our global operations, and this includes Japan, to focus on contributing to the company as a whole' … [do not show] pervasive control over the subsidiary that the 'mere department' standard requires"); J.L.B. Equities, 131 F. Supp. 2d at 550 ("The Court is not persuaded that failure to distinguish between a subsidiary on a webpage is sufficient to show that the parent controls the subsidiary's marketing and operation[s].").

[11] Markedly, Plaintiff does not cite any instance in which AJAM in fact consulted or sought approval from AJMN.

7

subsidiary a 'mere department' of the parent." Saraceno v. S.C. Johnson & Son, Inc., 83 F.R.D. 65, 71 (S.D.N.Y. 1979). The law is clear – the pervasive control required to confer jurisdiction is not established merely because a subsidiary is required to obtain its parent's approval for significant operational decisions but otherwise controls it day-to-day business.[12] Nor do the alleged facts that AJAM's website was a "subdomain" of AJMN's, that AJAM content was stored on AJMN servers, that AJAM employees used @aljazeera.net email, or that certain legal notices were required to be sent to AJMN headquarters suffice to confer jurisdiction over AJMN.

In sum, Plaintiff has failed to aver facts to show that AJAM conducted business in New York as AJMN's agent or "mere department." Therefore, AJAM's business operations in New York cannot form a basis for general personal jurisdiction over AJMN under CPLR § 301.

**B. Plaintiff Has Failed to Show AJMN Is Subject to Specific Jurisdiction in New York**

In her Opposition, Plaintiff makes clear that her only basis for claiming AJMN is subject to specific jurisdiction under CPLR § 302 is that "AJAM, acting as agent for AJMN and/or functioning as a 'mere department' of AJMN, clearly transacted business in New York." (See Pl. Opp'n at 18.) For the same reasons that the parent/subsidiary relationship between AJMN and AJAM does not confer jurisdiction under CPLR § 301, AJAM's business operations in New York cannot be used to establish that AJMN "transacts any business" in the state in order to confer specific jurisdiction under CPLR § 302.

Additionally, Plaintiff has failed to establish a "substantial nexus" between AJMN's purported business transactions and Plaintiff's claims of employment discrimination. (See AJMN

---

[12] See Palmieri, 793 F. Supp. at 1188-89 (commonly owned affiliates not mere departments even where parent approved major financial decisions, reviewed budget, and controlled personnel decisions); Morse Typewriter v. Samanda Office Comm'ns Ltd., 629 F. Supp. 1150 (S.D.N.Y. 1986) (subsidiary operationally independent of parent, even where required to obtain parent's approval for major financial expenditures, because "[subsidiary] exercises substantial discretion and independence within broad parameters established by its parent").

Memo at 19-20.) Plaintiff's bald assertions in her Opposition and proposed second amended complaint that AJMN and AJAM are a "single integrated employer" and "jointly employed Plaintiff, along with ICS" are the exact type of conclusory assertions that this Court should disregard when evaluating a motion to dismiss. See, e.g., Jazini, 148 F.3d at 185 (holding that, in absence of factual specificity, court need not accept as true legal conclusions concerning relationship between parent and subsidiary when evaluating personal jurisdiction).[13]

## C. Exercising Jurisdiction over AJMN Would Not Comport with Due Process

As set forth in AJMN's moving brief, the exercise of personal jurisdiction over AJMN in this case also would be inconsistent with constitutional due process because AJMN does not have the necessary and purposeful "minimum contacts" with New York and it would be unduly burdensome to require it to litigate in such a distant forum. (See AJMN Memo at 21-23.) In response, Plaintiff points to nothing more than AJMN's purported "interactions with, and control over, AJAM." As set forth above, however, this assertion rings hollow, and due process prohibits the exercise of personal jurisdiction over AJMN based solely on its in-state subsidiary. See Daimler AG v. Bauman, 571 U.S. __, 134 S.Ct. 746, 751 (2014). Plaintiff cites no case law to the contrary.

## D. Plaintiff Has Failed to Show that Fed. R. Civ. P. 4(k)(2) Is Applicable

Finally, Plaintiff's claim that Rule 4(k)(2) applies to the instant case is disingenuous. Plaintiff, purporting to cite AJMN's brief, claims that AJMN "contends that no United States court has jurisdiction over it because it allegedly conducts no business in the United States, has

---

[13] Ingenito v. RiRi USA, Inc., cited by Plaintiff, does not compel a different result. Id. 89 F. Supp. 3d 462 (E.D.N.Y. 2015). In Ingenito, the court asserted specific jurisdiction over a foreign parent of a New York subsidiary with respect to discrimination claims where the in-state subsidiary hired employees to sell and distribute the parent's products in New York, the plaintiff was one such employee, and the plaintiff's termination was "implemented with the knowledge and consent, and even at the direction of [parent]." Id. These facts plainly do not exist here.

9

no presence in the United States, and has no employees or agents in the United States." (See Pl. Opp'n at 21.) AJMN makes no such contention in its moving papers, and nothing could even arguably be construed as claiming same.[14] In moving to dismiss the instant case filed in New York, AJMN argues only that it is not subject to personal jurisdiction *in New York*. (See AJMN Memo at 9-18.) Plaintiff has not certified, or even alleged, that AJMN is not subject to jurisdiction in any other state, and she fails to cite to any case that would support application of Rule 4(k)(2) to the instant facts. See Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010) (granting motion to dismiss and holding Rule 4(k)(2) inapplicable where "although the Court has already found that Defendants are not subject to personal jurisdiction in New York, Plaintiffs have not certified that Defendants are not subject to jurisdiction in any other state" and "have not established that Defendants have sufficient contacts with the United States as a whole so as to satisfy the Fifth Amendment Due Process Clause").[15]

## CONCLUSION

For the above reasons, and those in AJMN's moving papers, the Court should enter an Order dismissing the Amended Complaint in its entirety with prejudice as against AJMN.[16]

---

[14] Nor does AJMN make any such argument in Fawzi v. Al Jazeera Media Network, 16-cv-01812 (D.D.C.), cited by Plaintiff. In Fawzi, an Egyptian citizen residing in Virginia who suffered injuries while working for AJMN in Egypt seeks to sue AJMN in Washington, D.C. AJMN moved to dismiss that case for lack of personal jurisdiction because it does not have substantial and pervasive contacts with D.C., and the specific claims raised by plaintiff in that case do not relate to any transaction connected with D.C.

[15] See also In re M/V MSC Flaminia, 107 F. Supp. 3d 313, 322-23 (S.D.N.Y. 2015) (granting motion to dismiss for lack of personal jurisdiction where plaintiff "has not alleged all of the elements required for the exercise of personal jurisdiction," including that foreign defendant not subject to jurisdiction in any other state).

[16] Alternatively, AJMN respectfully requests an evidentiary hearing, at which Plaintiff would be required prove the existence of personal jurisdiction by a preponderance of the evidence. See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

Dated: July 7, 2017  
       New York, NY

**DLA PIPER LLP (US)**

By:*/s/ Daniel Turinsky*
Daniel Turinsky
1251 Avenue of the Americas
New York, NY 10020
T: (212) 335-4500
daniel.turinsky@dlapiper.com

*Attorneys for Defendant*
*Al Jazeera Media Network*

11