**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BASSEMA YOUSEF,

Plaintiff,

-against-

AL JAZEERA AMERICA, AL JAZEERA MEDIA NETWORK and INFINITY CONSULTING SOLUTIONS,

Defendants.

Civil Action No.: 1:16-CV-6416 (CM)

**INFINITY CONSULTING SOLUTIONS'**
**MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

Dated: New York, New York
June 24, 2019

Michael S. Hanan, Esq.
Jeremi L. Chylinski, Esq.
GORDON & REES, LLP
One Battery Park Plaza, 28th Floor
New York, New York 10004
P: (212) 269-5500
F: (212) 269-5505
mhanan@grsm.com
jchylinski@grsm.com

*Attorneys For Defendant Infinity Consulting Solutions*

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ....1

II. STATEMENT OF FACTS ....3

A. Infinity Consulting Solutions ....3

B. Plaintiff's Employment With ICS ....4

C. Plaintiff's Complaint To ICS About Bashir ....4

D. ICS's Investigation Of Plaintiff's Complaints Against Bashir ....5

E. AJAM's Unilateral Termination Of Plaintiff ....5

F. AJAM's Testimony Surrounding Plaintiff's Termination ....6

G. Plaintiff's Testimony Regarding Her Claims Against ICS ....7

III. ARGUMENT ....7

A. Summary Judgment Standard ....7

B. Plaintiff's Gender Discrimination Claims Against ICS Must Be Dismissed ....8

C. Plaintiff's Hostile Work Environment/Sexual Harassment Claims Must Be Dismissed ....10

D. Plaintiff Cannot Maintain Retaliation Claims Against ICS ....11

E. Joint Employer Liability Is Inapplicable Here ....13

IV. CONCLUSION ....15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
611 F. Supp. 344 (S.D.N.Y. 1984)....................13

*Amaya v. Garden City Irrigation, Inc.*
645 F. Supp. 2d 116 (E.D.N.Y. 2009)....................11

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 106 S. Ct. 2505
91 L. Ed. 2d 202 (1986) ....................7, 8

*Arculeo v. On-Site Sales & Mktg., LLC*
425 F.3d 193 (2d Cir. 2005)....................13, 14

*Balderman v. United States Veterans Admin.*
870 F.2d 57 (2d Cir. 1989)....................7

*Barbosa v. Continuum Health Partners, Inc.*
716 F. Supp. 2d 210 (S.D.N.Y. 2010)....................13

*Callahan v. Consol. Edison Co. of N.Y., Inc.*
187 F. Supp. 2d 132 (S.D.N.Y. 2002)....................12

*Celotex v. Catrett*
477 U.S. 317106 S. Ct. 2548
91 L. Ed. 2d 265 (1986) ....................7, 10

*Dawson v. Bumble & Bumble*
398 F.3d 211 (2d Cir. 2005)....................9

*DeWitt v. Lieberman*
48 F. Supp. 2d 280 (S.D.N.Y. 1999)....................13

*El-Nahal v. Yassky*
835 F.3d 248 (2d Cir. 2016)....................8

*Fitzgerald v. Henderson*
251 F.3d 345 (2d Cir. 2001)....................10

*Goodman v. Port Auth. of N.Y. & N.J.*
850 F. Supp. 2d 363 (S.D.N.Y. 2012)....................9

*Gorokhovsky v. N.Y.C. Hous. Auth.*
552 F. App'x 100 (2d Cir. 2014)........................................................................................ 11

*Harris v. Forklift Systems, Inc.*
510 U.S. 17 (1993) ........................................................................................................... 10

*Hicks v. Baines*
593 F.3d 159 (2d Cir. 2010)............................................................................................... 11

*Jones v. Target Corp.*
No. 15-CV-4672, 2016 U.S. Dist. LEXIS 61,
(E.D.N.Y. Jan. 4, 2016)..................................................................................................... 12

*L.B. Foster Co. v. Am. Piles, Inc.*
138 F.3d 81 (2d Cir. 1998)................................................................................................... 7

*Leibowitz v. Cornell*
584 F.3d 487 (2d Cir. 2009)................................................................................................. 8

*Lima v. Addeco*
634 F. Supp. 2d 394 (S.D.N.Y. 2009)........................................................................ 9, 13, 14

*Littlejohn v. City of New York*
795 F.3d 297 (2d Cir. 2015)............................................................................................... 11

*Loeffler v. Staten Island Univ. Hosp.*
582 F.3d 268 (2d Cir. 2009)................................................................................................. 9

*Lopez v. Chubb & Son*
No. 16-CV-00934 (MPS)
2018 U.S. Dist. LEXIS 149956, (D. Conn. Sep. 4, 2018)........................................................ 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ........................................................ 8

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013)............................................................................................... 11

*Namenda Direct Purchaser Antitrust Litig.*
331 F. Supp. 3d 152 (S.D.N.Y. 2018)................................................................................... 8

*Nick's Garage, Inc. v. Progressive Ins. Co.*
875 F.3d 107 (2d Cir. 2017)............................................................................................... 12

*NLRB v. Solid Waste Servs.*
38 F.3d 93 (2d Cir. N.Y. 1994) .......................................................................................... 13

*Perry v. Ethan Allen, Inc.*
115 F.3d 143 (2d Cir. 1997) ........ 10

*Richardson v. New York State Dep't of Corr. Serv.*
180 F.3d 426 (2d Cir. 1999) ........ 10

*Scotto v. Almenas*
143 F.3d 105 (2d Cir. 1998) ........ 8

*Shiflett v. Scores Holding Co.*
No. 13-CV-4076 (NRB), 2014 U.S. Dist. LEXIS 51619
(S.D.N.Y. Apr. 10, 2014) ........ 12

*Smythe v. Am. Red Cross Blood Servs. N.E. New York Region*
797 F. Supp. 147 (N.D.N.Y. 1992) ........ 9

*Sosa v. Medstaff, Inc.*
12-CV-8926 (NRB), 2013 U.S. Dist. LEXIS 175278,
(S.D.N.Y. Dec. 13, 2013) ........ 11, 12, 14

*Torres-Negron v. Merck & Co.*
488 F.3d 34 (1st Cir. 2007) ........ 11

*Valcarcel v First Quality Maintenance*
41 Misc. 3d 1222(A) (N.Y. Sup. Ct. 2013) ........ 13

*Vargas v. Morgan Stanley*
438 F. App'x 7 (2d Cir. 2011) ........ 10

*Vega v. Hempstead Union Free Sch. Dist.*
801 F.3d 72 (2d Cir. 2015) ........ 8

*Woodman v. WWOR-TV, Inc.*
411 F.3d 69 (2d Cir. 2005) ........ 9

*Yousef v. Al Jazeera Media Network*
No. 16-CV-6416 (CM), 2018 U.S. Dist. LEXIS 188198,
(S.D.N.Y. Oct. 31, 2018) ........ 11

*Zakrzewska v. New Sch.*
14 N.Y.3d 469 (2010) ........ 10

**Statutes**

Civil Rights Act of 1964 ("Title VII") ........ 1, 8, 9, 10, 11, 12, 13

New York Executive Law § 296 ........ 1

NYC Admin. Code § 8-107 ........ 1

Defendant Infinity Consulting Solutions ("ICS") respectfully submits this memorandum of law in support of its Fed. R. Civ. P. Rule 56 motion for summary judgment seeking the dismissal of Plaintiff Bassema Yousef's Second Amended Complaint ("Complaint") in its entirety, and with prejudice.

## I. PRELIMINARY STATEMENT

Plaintiff alleges six causes of action against Al Jazeera Media Network ("AJMN"), Al Jazeera America ("AJAM") (together, "Al Jazeera") and ICS. Based on numerous and troubling allegations against Plaintiff's supervisor at AJAM, the Director of AJAM's Project Management Office, Luai Bashir, and AJAM's near immediate termination of Plaintiff's work assignment after she complained to ICS, Plaintiff alleges the following claims: (1) gender discrimination, sexual harassment, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation in violation of Title VII; (3) gender discrimination, sexual harassment, and hostile work environment in violation of the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"); (4) retaliation in violation of the NYSHRL; (5) gender discrimination, sexual harassment, and hostile work environment in violation of the New York City Human Rights Law, NYC Admin. Code § 8-107 ("NYCHRL"); and (6) retaliation in violation of the NYCHRL. Plaintiff cannot maintain these claims against ICS, and her Complaint must be dismissed, with prejudice.

Despite her best efforts to constrain ICS to this litigation, Plaintiff's sworn testimony proves conclusively that ICS is not – and cannot be – liable for any of her claims. Plaintiff testified that no one at ICS ever harassed or discriminated against her. Plaintiff's gender discrimination, sexual harassment, and hostile environment claims must, therefore, be dismissed.

The same is true concerning Plaintiff's retaliation claims. Plaintiff testified that, although she had no prior relationship with ICS, and she was brought to ICS by Bashir solely to work for AJAM until AJAM hired her full time, she was subjected to retaliation by ICS because ICS did not place her in another assignment after her termination by AJAM. The record tells a different story. Kevin Hyatt, the Human Resources Manager for ICS, asked AJAM if Plaintiff could be placed there after Bashir, the sole alleged bad actor, was terminated, and also attempted to get an updated resume from Plaintiff after she was terminated. AJAM refused Hyatt's request and Plaintiff never provided an updated resume. No viable retaliation claim can flow from these undisputed facts, and Plaintiff's retaliation claims must dismissed.

To the extent Plaintiff may seek to rely on a joint employer theory to bind ICS to this case, the result is no different. Although there can be no real argument that ICS employed Plaintiff – she executed an employment agreement with the company – joint-employer liability does not, by itself, implicate vicarious liability. Instead, a finding that two companies are an employee's "joint employers" only affects each employer's liability to the employee *for their own actions*, not for each other's actions. Here, Bashir and AJAM are the sole alleged harassers and discriminators, and AJAM admits that it unilaterally, and without input or consultation from ICS, terminated Plaintiff's assignment – seven days after she complained about Bashir. No conceivable joint employer boot-strapping is appropriate on this record.

The timing of ICS' investigation is not a safe-haven for Plaintiff's claims, either. The record proves that, after AJAM refused to meet with Plaintiff to discuss her allegations against Bashir, she reported her concerns to Hyatt in person on Friday, September 4, 2015. That same day, Hyatt attempted to contact the witness Plaintiff identified – Evan Andrews, another ICS contractor assigned to AJAM who reported to Bashir. Due to the September 7, 2015 Labor Day

holiday, Hyatt was unable to speak with Andrews until September 8, and Andrews confirmed some, but not all, of Plaintiff's allegations. After he met with Andrews, Hyatt attempted to speak with Plaintiff on September 8, but was unable to reach her. Hyatt attempted to contact Plaintiff again on September 10, and was unable to speak with her. Then, on September 11, 2015, AJAM unilaterally ended Plaintiff's and Andrew's assignments. Consequently, any allegations of a sluggish investigation by ICS are unfounded, self-serving, and, ultimately, disproven by the undisputed record.

Put simply, Bashir and AJAM are the only alleged harassers and discriminators. When Plaintiff attempted to complain about Bashir's unceasing harassment, AJAM refused to meet with her. And, AJAM ended Plaintiff's assignment seven days after she complained to ICS about Bashir. ICS was not involved or consulted about AJAM's termination decision and Plaintiff testified that ICS neither harassed her nor discriminated against her. Moreover, Plaintiff's support for her retaliation claims is, by any measure, woefully insufficient and is, in any event, undermined by the record. Consequently, Plaintiff's Complaint against ICS must be dismissed in its entirety, and with prejudice.

## II. STATEMENT OF FACTS[1]

### A. Infinity Consulting Solutions

ICS is one of the nation's leading staffing and recruiting resources specializing in connecting talented people to the businesses that need them. (Def. Stmt., ¶ 1.) With offices in New York, Chicago, Minneapolis, Washington D.C., Dallas, Denver, Florida, and Houston, ICS offers contract placement, permanent placement, temp to perm placement, and employer of record payroll services. (Id., ¶ 2.) Kevin Hyatt is the Human Resources Manager for ICS. (Id.,

[1] All references herein are to Defendant Infinity Consulting Solutions' Rule 56.1 Statement Of Undisputed Material Facts, cited as "Def. Stmt. ¶".

¶ 3.)

**B. Plaintiff's Employment With ICS**

On January 9, 2015, Luai Bashir, the former Director of the Project Management Office ("PMO") at AJAM, emailed ICS and directed the company to onboard Plaintiff to work as a Program Manager at AJAM for a period of three months. (Id., ¶ 4.) Plaintiff was escorted by Bashir to ICS's offices that same day and completed the necessary paperwork to commence her employment. (Id., ¶ 5.)

Notably, Plaintiff understood that ICS was not her employer. (Id., ¶ 7.) Instead, based on Bashir's representations, Plaintiff believed that she was on-boarded by ICS solely to speed up her forthcoming employment with AJAM. (Id., ¶ 8.)

**C. Plaintiff's Complaint To ICS About Bashir**

Prior to submitting her time sheets to ICS for payment, Plaintiff was required to get Bashir's approval for her hours worked. (Id., ¶ 9.) Plaintiff contacted Hyatt on September 2, 2015 via telephone regarding Bashir's refusal to approve 80 hours of time Plaintiff worked during a pre-approved trip to Jordan. (Id., ¶ 10.) During this call, Plaintiff informed Hyatt that she believed Bashir refused to approve her hours because he was "retaliating against her," but would not further elaborate until she spoke with her husband. (Id., ¶ 11.)

Plaintiff met with Hyatt in person on September 4, 2015. (Id., ¶ 13.) During this meeting, Plaintiff detailed her allegations of harassment and discrimination against Bashir. (Id., ¶ 14.) She alleged, among other things, that Bashir asked her to stay in the office well past typical and appropriate work hours, and that Bashir would "engage in personal and inappropriate conversations," including "topics that were sexual in nature." (Id., ¶ 15.)

Plaintiff further relayed that Bashir suggested that her husband did "not give her enough attention, and never satisfie[d] her," asked her what type of men she liked, and made other

inappropriate comments. (Id., ¶ 16.) After the meeting, Plaintiff sent Hyatt emails with representative text messages from Bashir. (Id., ¶ 17.)

**D. ICS's Investigation Of Plaintiff's Complaints Against Bashir**

Based on Plaintiff's allegations, Hyatt launched an investigation. (Id., ¶ 18.) As part of that investigation, Hyatt spoke to Evan Andrews, another ICS contractor assigned to AJAM who also reported to Bashir, and who Plaintiff identified as a potential witness to her allegations. (Id., ¶ 19.) Hyatt left a message for Andrews on September 4, 2015 and spoke with him on September 8, 2015, the day after the Labor Day holiday. (Id., ¶ 20.) Andrews confirmed some, but not all, of Plaintiff's allegations. (Id., ¶ 22.)

After his conversation with Andrews, Hyatt attempted to reach Plaintiff that same day – September 8, 2015 – to speak about her allegations and his conversation with Andrews. (Id., ¶ 23.) He was unable to reach her. (Id.) Hyatt tried to reach Plaintiff on September 10, 2015, but was, again, unable to speak with her. (Id., ¶ 24.)

**E. AJAM's Unilateral Termination Of Plaintiff**

On September 11, 2015, AJAM unilaterally and without any involvement from ICS, terminated Plaintiff's and Andrews' assignments. (Id., ¶ 25.) Plaintiff testified that she does not know who made the termination decision. (Id., ¶ 26.) And, Hyatt testified that he had not informed anyone at AJAM about the investigation prior to Plaintiff's termination, as the investigation was still ongoing. (Id., ¶ 27.)

Hyatt spoke with Plaintiff and Andrews concerning the termination on September 13, 2015, and Andrews indicated during that conversation that he informed Bashir on September 8, 2015 that Hyatt had contacted him about Plaintiff's allegations. (Id., ¶ 28.) Thereafter, on September 14, 2015, Andrews called Hyatt to add some additional points about Bashir and his work at AJAM. (Id., ¶ 29.)

Hyatt attempted to contact Kate O'Brien, the former President of Al Jazeera Media Network ("AJMN"), on September 14, 2015 to discuss Plaintiff's and Andrew's concerns regarding their terminations. (Id., ¶ 30.) Hyatt was informed that he would soon hear from H.J. Chang, the former Senior Vice President of Human Resources for AJAM. (Id., ¶ 31.) Hyatt eventually spoke with Chang on September 18, 2015 and communicated Plaintiff's and Andrews' concerns. (Id., ¶ 32.)

Hyatt next spoke with Chang on September 29, 2015, and tried to ascertain whether Chang and AJAM were investigating and addressing Plaintiff's and Andrews' concerns. (Id., ¶ 34.) Hyatt sent Chang an email that same day detailing their discussion. (Id., ¶ 35.) During their September 29 discussion, Hyatt asked Chang if there was a possibility of Plaintiff returning to AJAM, and Chang responded that there was nothing available. (Id., ¶ 36.)

Prior to his September 29, 2015 conversation, Hyatt attempted to speak with Plaintiff on September 21, 2015, but she did not respond. (Id., ¶ 37.) Hyatt also testified that, after AJAM terminated Plaintiff, he tried to get an updated resume from her and thereby place her at another location, but Plaintiff did not respond. (Id., ¶ 38.)

**F. AJAM's Testimony Surrounding Plaintiff's Termination**

AJAM claims that the decision to terminate Plaintiff and Andrews was made at a meeting at some point during the summer of 2015, when the company chose to shut down the PMO and thereby terminate Bashir, Plaintiff, and Andrews. (Id., ¶ 39.) No notes, emails, or other documents were created by AJAM during or after this "summer of 2015" meeting indicating that a decision was made to shut down the PMO and/or terminate Bashir, Plaintiff, and Andrews. (Id., ¶ 40.) And, no explanation was provided as to why AJAM chose to terminate Plaintiff on September 11, 2015, given that the decision to shut down the PMO was made months earlier, in the summer. (Id., ¶ 41.)

**G. Plaintiff's Testimony Regarding Her Claims Against ICS**

Plaintiff testified that she was never subjected to harassment from Hyatt or anyone else at ICS. (Id., ¶ 42.) Plaintiff also testified that she was never subjected to discrimination by Hyatt or anyone else at ICS. (Id., ¶ 43.)

Plaintiff testified that, although she had no prior relationship with ICS, and she was brought to ICS by Bashir solely to work for AJAM until AJAM hired her full time, she was subjected to retaliation by ICS because ICS was unable place her in another assignment after AJAM terminated her assignment. (Id., ¶ 44.)

**III. ARGUMENT**

**A. Summary Judgment Standard**

A party is entitled to summary judgment when, as here, there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) When addressing a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *L.B. Foster Co. v. Am. Piles, Inc*., 138 F.3d 81, 87 (2d Cir. 1998). Whether any disputed issue of fact exists is for the Court to determine. *See Balderman v. United States Veterans Admin*., 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." El-Nahal v. Yassky, 835 F.3d 248, 256 (2d Cir. 2016), cert. denied, 137 S. Ct. 2187, 198 L. Ed. 2d 255 (2017) (internal quotation marks and citations omitted). The party opposing

summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

"[N]ot every disputed factual issue is material in light of the substantive law that governs the case." *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 195 (S.D.N.Y. 2018). Instead, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. And, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Thus, to withstand a summary judgment motion, "sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant." *In re Namenda*, at 195.

**B. Plaintiff's Gender Discrimination Claims Against ICS Must Be Dismissed**

To allege a viable gender discrimination claim, Plaintiff must show that "(1) the employer took adverse action against [her] and (2) [her] . . . sex . . . was a motivating factor in the employment decision," which can be shown "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist*. 801 F.3d 72, 87 (2d Cir. 2015); *see also Leibowitz v. Cornell,* 584 F.3d 487, 498 n. 1 (2d Cir. 2009) (under New York law, "gender discrimination claims brought pursuant to the NYSHRL and the NYCHRL are analyzed under the Title VII framework"); *Loeffler v. Staten Island Univ. Hosp*. 582 F.3d 268, 278 (2d Cir. 2009) ("[C]laims under the City HRL must be reviewed independently from and 'more liberally' than their federal and state counterparts.")

Plaintiff testified that no one at ICS ever discriminated against her (Def. Stmt., ¶ 42) and there was plainly no adverse action by ICS. Rather, AJAM terminated Plaintiff's assignment and ICS had not input on that decision. (Def. Stmt., ¶ 25.)

Based on this undisputed record, Plaintiff cannot maintain her gender discrimination claims against ICS, and those claims must be dismissed, as a matter of law. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005) ("[A]n employer's intent to discriminate must be evaluated by reference to the decision-maker actually ordering the adverse employment action . . .") (citing *Dawson v. Bumble & Bumble*, 398 F.3d 211, 224-25 (2d Cir. 2005)); *Lopez v. Chubb & Son*, No. 16-CV-00934 (MPS), 2018 U.S. Dist. LEXIS 149956, at *22 (D. Conn. Sep. 4, 2018) (awarding summary judgment to placement agency where the "record [was] bereft of any evidence that [the agency] played any part in [the plaintiff's] termination . . . , other than to convey notice of the termination to her."); *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 386 (S.D.N.Y. 2012) ("[e]ven where two companies are deemed a joint employer, however, it is not necessarily the case that both are liable for discriminatory conduct") (internal citation omitted); *Lima v. Addeco*, 634 F. Supp. 2d 394, 401-2 (S.D.N.Y. 2009) (awarding summary judgment to placement agency on the plaintiff's national origin discrimination claim and dismissing the complaint where the plaintiff made no allegations of discrimination against the placement agency, the agency did not make the termination decision or have the ability to overturn that decision, and the plaintiff was unable, as here, to provide "any evidence linking [the placement agency] in any way with the adverse employment decision"); *see also Smythe v. Am. Red Cross Blood Servs. N.E. New York Region*, 797 F. Supp. 147, 151 (N.D.N.Y. 1992) (noting that the non-movant must make a showing sufficient to establish all elements essential to its case, and that, "[i]f the non-movant fails to satisfy this initial burden, there can be no genuine

issue as to any material fact because 'a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

**C. Plaintiff's Hostile Work Environment/Sexual Harassment Claims Must Be Dismissed**

In order to allege a valid claim of hostile-work environment/sexual harassment, a plaintiff must establish two elements. *Fitzgerald v. Henderson*, 251 F.3d 345, 346 (2d Cir. 2001). First, she must prove that the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, (1993) (citation and internal quotation marks omitted). Second, the plaintiff must allege a specific basis for imputing the hostile work environment to the employer. *See, e.g., Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997); *see also* V*argas v. Morgan Stanley*, 438 F. App'x 7, 9 (2d Cir. 2011) (analyzing Title VII and NYSHRL hostile environment claims under the same standard); *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 473 (2010) (noting that, under the NYCHRL, a hostile work environment claim is a form of gender discrimination, and analyzed under the same standard.)

Plaintiff testified that she was never subjected to a hostile environment or harassment from Hyatt or anyone else at ICS (Def. Stmt., ¶ 41), and she makes no allegations against ICS in support of her hostile environment/sexual harassment claims. Under these circumstances, Plaintiff's hostile-work environment/sexual harassment claims against ICS must be dismissed. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999) (to survive a motion for summary judgment, a plaintiff claiming she was the victim of an unlawful hostile work environment must elicit evidence from which a reasonable trier of fact could conclude "that a specific basis exists for imputing the conduct that created the hostile

environment to the employer"); *see also Yousef v. Al Jazeera Media Network*, No. 16-CV-6416 (CM), 2018 U.S. Dist. LEXIS 188198, at *4 (S.D.N.Y. Oct. 31, 2018) ("A finding that companies are joint employers affects an employer's liability to the employee for its own actions but not necessarily the other employer's actions."); *Sosa v. Medstaff, Inc*., 12-CV-8926 (NRB), 2013 U.S. Dist. LEXIS 175278, (S.D.N.Y. Dec. 13, 2013) (dismissing claims against staffing agency under more liberal motion to dismiss because plaintiff "ha[d] not pled any facts indicating that the [agency] should be held liable for the allegedly discriminatory and hostile conduct . . . "); *Amaya v. Garden City Irrigation, Inc*., 645 F. Supp. 2d 116, 122-3 (E.D.N.Y. 2009) ("a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions.") (citing *Torres-Negron v. Merck & Co*., 488 F.3d 34, 40 n.1 (1st Cir. 2007)).

**D. Plaintiff Cannot Maintain Retaliation Claims Against ICS**

To establish a prima facie case of retaliation under Title VII and NYSHRL, Plaintiff must show: "(1) participation in a protected activity; (2) ICS knew of the protected activity; (3) an adverse employment action by ICS; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). To prevail on a retaliation claim under the NYCHRL, Plaintiff need only show that [s]he 'took an action opposing [her] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Gorokhovsky v. N.Y.C. Hous. Auth*., 552 F. App'x 100, 102 (2d Cir. 2014) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 112 (2d Cir. 2013)).

Here, too, Plaintiff misses the mark. ICS had no role in AJAM's termination decision. And, there is no viable causal connection between Plaintiff's complaint to ICS and AJAM's

decision to terminate her employment. In fact, Hyatt testified that he had not informed AJAM about Plaintiff's allegations until after she was terminated because he was still investigating her allegations. (Def. Stmt., ¶ 27.)

Along the same lines, there is no causal connection between Plaintiff's complaints and the fact that she was not placed at another assignment by ICS. (Def. Stmt., ¶ 44.) The record demonstrates that Hyatt asked about placing Plaintiff back at AJAM – a request refused by AJAM (Id., ¶ 35) – and also attempted to follow up with Plaintiff to get an updated resume and thereby place her at another location, but Plaintiff did not contact him, (Id., ¶¶ 36 & 37).

Likewise, it strains credulity that ICS would refuse to place Plaintiff at another assignment given that ICS makes profit from such assignments and the company had no issue with Plaintiff. To the contrary, ICS investigated Plaintiff's claims, attempted to reach a resolution with AJAM after Plaintiff was terminated, and was stymied by AJAM's lack of cooperation. And, despite Bashir's refusal to approve Plaintiff's 80 hours of work during her trip to Jordan, ICS paid her for that time and was not reimbursed. Plaintiff's claim that ICS blackballed her for complaining about Bashir – an AJAM employee over whom ICS had no control – rings hollow.

Based on this undisputed record, ICS cannot be liable for Plaintiff's retaliation claims, and those claims must also be dismissed. *See Shiflett v. Scores Holding Co.*, No. 13-CV-4076 (NRB), 2014 U.S. Dist. LEXIS 51619 (S.D.N.Y. Apr. 10, 2014) (dismissing the plaintiff's discrimination, harassment, and retaliation claims on summary judgment and noting that "[w]hen a plaintiff alleges Title VII liability based on a joint employer theory, "the appropriate focus is on the actual decisionmaker") (citing *Sosa v. Medstaff, Inc.*, No. 12-CV-8926(NRB), 2013 U.S. Dist. LEXIS 175278, at *9 (S.D.N.Y. Dec. 13, 2013); *Jones v. Target Corp.*, No. 15-CV-4672,

2016 U.S. Dist. LEXIS 61, at *25 (E.D.N.Y. Jan. 4, 2016) (dismissing retaliation claim and noting that "even if [the plaintiff] had alleged a protected activity, because she has not alleged a causal connection, her claims fail."); *Callahan v. Consol. Edison Co. of N.Y., Inc.*, 187 F. Supp. 2d 132 (S.D.N.Y. 2002) (granting motion to dismiss the plaintiff's retaliation claim where she failed to allege "a causal connection between her protected activity and an adverse employment action" by the defendant) *see also Nick's Garage, Inc. v. Progressive Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (noting that a movant for summary judgment can meet its burden by [1] submitting evidence that negates an essential element of the non-moving party's claim, or [2] demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the claim).

**E. Joint Employer Liability Is Inapplicable Here**

Under the "joint employer" doctrine, "an employee formally employed by one entity can be found to be constructively employed by another entity and may therefore state an employment discrimination claim against her constructive employer as well as her direct employer." *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 216-217 (S.D.N.Y. 2010); *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197-98 (2d Cir. 2005) (applying the "joint employer" doctrine in the context of the NYCHRL). The "joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees." *NLRB v. Solid Waste Servs.*, 38 F.3d 93, 94 (2d Cir. N.Y. 1994). The factors relevant to the determination of "control" are "commonality of hiring, firing, discipline, pay, insurance, records, and supervision," *See id.* at 138-39; *Valcarcel v First Quality Maintenance*, 41 Misc. 3d 1222(A) (N.Y. Sup. Ct. 2013) (same). Notably, the joint employer doctrine has been applied to temporary employment and staffing agencies and their client entities. *See, e.g.*, *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 288 (S.D.N.Y. 1999) (employment

agency that paid plaintiff and client entity that supervised plaintiff considered plaintiff's joint employers); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 611 F. Supp. 344, 347-49 (S.D.N.Y. 1984) (utilizing common-law loaned servant doctrine to hold that plaintiff was employee of both temporary employment agency and client entity for Title VII purposes).

The inquiry does not end with a joint employer determination. Instead, "[e]ven where two companies are deemed a joint employer, . . . it is not necessarily the case that both are liable for discriminatory conduct." *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009). Thus, in evaluating alleged discriminatory activity in the joint-employment context, "**the appropriate focus is on the actual decisionmaker –** the conduct of one employer cannot necessarily be imputed to the other." *Sosa v. Medstaff, Inc.*, No. 12-CV-8926(NRB), 2013 U.S. Dist. LEXIS 175278, at *9 (S.D.N.Y. Dec. 13, 2013).

Plaintiff has not pled any facts – and the record is devoid of any support – indicating that ICS should be liable for Bashir's conduct or AJAM's decision to terminate her assignment. Indeed, Bashir – an AJAM employee – is the only person against whom Plaintiff makes any substantive allegations. And, Plaintiff does not claim that ICS was in a position to control Bashir or AJAM – it wasn't. Thus, ICS is not and cannot be liable based on a purported "fail[ure] to take corrective measures within [their] control" given that even if corrective measures were available, Plaintiff's near immediate termination by AJAM prevented ICS from acting on those measures. *See Lima*, 634 F. Supp. 2d at 402 (awarding summary judgment to an alleged joint employer and noting that "[e]ven assuming [the plaintiff's] termination from . . . employment . . . was motivated in part by an impermissible reason, [the plaintiff] has not provided any evidence linking [the placement agency] in any way with the adverse employment decision" or presented

any evidence "showing [the placement agency] knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control.")

The record further demonstrates that ICS did, in fact, attempt to place Plaintiff at AJAM after she was terminated and also sought an updated resume to place her at another location. (Def. Stmt., ¶ 35 - 37.) Accordingly, ICS is not – and cannot be – liable to Plaintiff under a joint employer theory, and Plaintiff's claims against ICS must be dismissed. *See Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 199 (2d Cir. 2005) ("[W]hen the circumstances of one employee's employment justify the conclusion that she is being employed jointly by two distinct employers, it does not follow that all the employees of both employers are part of an integrated entity encompassing both").

## IV. CONCLUSION

For all of the foregoing reasons, this Court should grant ICS's motion for summary judgment, dismiss Plaintiff's Complaint against ICS in its entirety, and with prejudice, and award to ICS such other and further relief that the Court deems just and proper.

Dated: June 24, 2018
New York, New York

Respectfully submitted,
GORDON & REES LLP

By: *s/ Jeremi L. Chylinski, Esq.*
Michael S. Hanan, Esq.
Jeremi L. Chylinski, Esq.

One Battery Park Plaza, 28th Floor
New York, NY 10004
P: (212) 269-5500
F: (212) 269-5505
mhanan@grsm.com
jchylinski@grsm.com

*Attorneys For Defendant*
*Infinity Consulting Solutions*